**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cory Shane Pilger,<br><br>                Plaintiff,<br><br>vs.<br><br>Unknown Party, et al.,<br>                Defendants. | No. CV-24-02427-PHX-SPL<br><br>**ORDER** |

Before the Court is Plaintiff's Motion for Default Judgment (Doc. 24) as to Defendant 1, Lyudmila Czarnecki, and John Does 1–5 ("Defendants"). Defendants have not appeared in this action and did not respond to the Motion. For the following reasons, the Motion will be denied.

**I.   BACKGROUND**

On September 13, 2024, Plaintiff filed a Complaint against Defendant 1, also known as Lyudmila Czarnecki ("Defendant Czarnecki"), and John Doe Defendants 1–5. (Doc. 1.) Plaintiff initiated this action after he was deceived by a cryptocurrency scam known as "pig butchering." (*Id.* at 4, ¶¶ 13–14.) Plaintiff alleges that "Defendants stole cryptocurrency from Plaintiff . . . pursuant to a sophisticated global internet cryptocurrency fraud and conversion scheme." (*Id.* at 2, ¶ 1.) In June 2023, Plaintiff alleges that Defendant Czarnecki contacted him through social media and represented that she "would teach [him] how to become a successful cryptocurrency trader." (*Id.* at 5, ¶¶ 20–21.) Defendant Czarnecki facilitated Plaintiff's access to several websites and an application "which she claimed was

a legitimate decentralized trading exchange." (*Id.* ¶ 24.) Plaintiff transferred cryptocurrency to those platforms believing he was earning legitimate returns from his investments. (*Id.* at 6, ¶ 27–29.) Overall, Plaintiff initiated five transactions through the fraudulent platforms, transferring cryptocurrency in the amount of $226, 237.97. (*Id.* at 7, ¶ 39.) Plaintiff realized that his cryptocurrency was stolen after he attempted to move it back to other trading platforms and was unable to do so. (*Id.* at 6–7, ¶¶ 31–37.)

Plaintiff retained experts to trace the stolen cryptocurrency. (*Id.* at 7, ¶ 40.) The stolen assets were traced to five cryptocurrency deposit wallets. (*Id.* at 3, ¶ 10.) Plaintiff alleges that "John Doe Defendants 1–5 are the cohorts of Defendant [Czarnecki] and are the owners of the . . . cryptocurrency deposit wallets where Plaintiff's stolen cryptocurrency assets were transferred." (*Id.*) Plaintiff alleges that the "[p]arties' communications demonstrated that Defendants [John Does] 1–5 are Chinese and are likely located in China." (*Id.* ¶ 11.) He also asserts that Defendant Czarnecki represented "that she was Polish" and alleges that she is "likely located outside of the United States in Poland." (*Id.* ¶ 9.)

In his Complaint, Plaintiff asserts claims for: (1) racketeering in violation of 18 U.S.C. § 1964, (2) conversion, (3) unjust enrichment, (4) imposition of constructive trust and disgorgement of funds, and (5) conspiracy. (Doc. 1 at 8–13.) After initiating this case, Plaintiff filed a Motion for Alternative Service, asking to serve Defendants via Instagram, Telegram, e-mail, Non-Fungible Token ("NFT") electronic transfer to Defendants' cryptocurrency wallet addresses, and publication via website. (Doc. 16 at 4.) The Court granted the Motion (Doc. 19), and Plaintiff effected service via NFT and publication on a website on March 12, 2025 (Doc. 20). No Answer was filed, and on July 10, 2025, the Clerk of Court entered default pursuant to Federal Rule of Civil Procedure 55(a). (Doc. 23.) Now, Plaintiff moves for default judgment.

///

///

///

## II.  DISCUSSION

### A.  Subject Matter Jurisdiction, Personal Jurisdiction, and Service

When default judgment is sought against a non-appearing party, a court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place."). A court has a similar duty with respect to service of process. *See Fishman v. AIG Ins. Co.*, No. CV 07-0589-PHX-RCB, 2007 WL 4248867, at *3 (D. Ariz. Nov. 30, 2007) ("Because defendant has not been properly served, the court lacks jurisdiction to consider plaintiff's motions for default judgment."). These considerations are "critical because '[w]ithout a proper basis for jurisdiction, or in the absence of proper service of process, the district court has *no power to render any judgment* against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process.'" *Id.* at *1 (citing *S.E.C. v. Ross*, 504 F.3d 1130, 1138–39 (9th Cir. 2007)).

This court has subject matter jurisdiction because Plaintiff filed a claim for racketeering in violation of 18 U.S.C. § 1964, the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (Doc. 1 at 8–10.) Thus, there is jurisdiction pursuant to 28 U.S.C. § 1331. The Court may exercise supplemental jurisdiction over Plaintiff's state law claims for conversion, unjust enrichment, and conspiracy as they pertain to the same case or controversy: the alleged cryptocurrency scam. *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *see also Kuba v. 1–A Agric. Ass'n*, 387 F.3d 850, 855–56 (9th Cir. 2004) ("Nonfederal claims are part of the same 'case' as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding.") (citation omitted).

As to personal jurisdiction, the Court has jurisdiction over Defendants in Arizona because they directed their activities to Plaintiff in Arizona, Plaintiff's claims arise of their conduct in Arizona, and Defendants were properly served. *See Pennoyer v. Neff*, 95 U.S. 714, 722 (1877) ("[E]very State possesses exclusive jurisdiction and sovereignty over persons and property within its territory."); *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (noting that a federal court lacks personal jurisdiction over defendant unless defendant properly served); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801–02 (9th Cir. 2004). Plaintiff alleges that Defendants "direct business activities toward and conduct business with consumers throughout the United States, including within the State of Arizona" through the fraudulent website and mobile application. (Doc. 1 at 2, ¶ 6.) Further, Plaintiff alleges that "Defendants directed numerous false and fraudulent representations to Plaintiff in [Arizona], stole Plaintiff's assets within this district, and caused significant harm to Plaintiff in this district." (*Id.* at 2–3, ¶ 7.) Defendants were properly served on March 12, 2025 in accordance with the Court's Order. (*See* Docs. 19, 20.) Having found that jurisdiction and service are proper, the Court turns to whether default judgment is appropriate.

### B.     Default Judgment Analysis: *Eitel* Factors

"A defendant's default does not automatically entitle a plaintiff to a default judgment." *Hartford Life & Accident Ins. Co. v. Gomez*, No. CV-13-01144-PHX-BSB, 2013 WL 5327558, at *2 (D. Ariz. Sept. 24, 2013). Instead, once a default has been entered, the district court has discretion to grant a default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors the Court may consider include: (1) the possibility of prejudice to the plaintiff; (2) the merits of the claim; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the policy favoring a decision on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In applying the *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United*

*Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). In the context of the RICO claims, the Ninth Circuit has cautioned, "[w]e believe that pleading requirements should be enforced strictly when default judgments are sought under RICO." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir. 1988) (citation omitted).

### 1. First, Fourth, Fifth and Sixth *Eitel* Factors

In the present case, the first, fourth, fifth, and sixth *Eitel* factors weigh in favor of granting default judgment. The first factor is the possibility of prejudice to Plaintiff. Defendants have failed to appear in this action, despite having been served in March 2025. (Doc. 20.) Because Defendants have failed to return Plaintiff's cryptocurrency and failed to respond in this action, Plaintiff's only available recourse is through this litigation. *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *3 (D. Ariz. Mar. 27, 2020) (citing *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)). Thus, the first factor weighs in favor of default judgment.

Under the fourth factor, this Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Zekelman*, 2020 WL 1495210, at *4 (citation omitted). Here, Plaintiff asserts in Count IV of the Complaint that "[t]his is an action to impose a constructive trust upon the property taken from Plaintiff" and "for the restoration of that wrongfully obtained property." (Doc. 1 at 11, ¶¶ 67–68.) Plaintiff also requests statutory treble damages under RICO, punitive damages, costs, and interest under the other counts of the Complaint. (*Id.* at 10–13.) The requested treble and punitive damages would be substantial. Even so, the Court finds the amount of money at stake is reasonable because it is based on the value of the stolen cryptocurrency. The fourth factor weighs slightly in favor of granting default.

The fifth *Eitel* factor—the possibility of factual disputes—necessarily weighs in favor of Plaintiff because Defendants' "failure to participate means there are no disputed material facts." *PragmaticPlay Int'l Ltd. v. Agenpragmaticplay.live*, No. CV-23-00497-

PHX-DLR, 2024 WL 113306, at *4 (D. Ariz. Jan. 10, 2024). Finally, the sixth factor, whether default was due to excusable neglect, weighs slightly in favor of granting default judgment. Because service was effectuated on Defendants via NFT and website publication (Doc. 20), it is unlikely that Defendants' failure to appear was the result of excusable neglect.

### 2.     Second, Third, and Seventh *Eitel* Factors

The remaining *Eitel* factors all weigh in favor of denying default judgment. The second and third factors—the merits of the claims and the sufficiency of the Complaint— "are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Zekelman*, 2020 WL 1495210, at *5 (citation omitted). When the complaint sufficiently states a claim for relief, these factors favor a default judgment. *See Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir. 1978). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Zekelman*, 2020 WL 1495210, at *5 (citation omitted).

"In reviewing a default judgment, this court takes 'the well-pleaded factual allegations' in the complaint 'as true.'" *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (quoting *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992)). "However, a 'defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" *Id.* (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975)). Here, Plaintiff brings a claim for racketeering in violation of 18 U.S.C. § 1964, a provision of the RICO Act. (Doc. 1 at 8–10.) The Court finds that the Complaint fails to state a claim for relief.

"Broadly speaking, there are two parts to a civil RICO claim. The civil RICO violation is defined under 18 U.S.C. § 1962, while 'RICO standing' is defined under 18 U.S.C. § 1964(c)." *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243, 1248 (9th Cir. 2019). "Under § 1962(c), it is illegal for any person to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity, where that enterprise affects

interstate commerce." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (internal quotations omitted). There are five elements of a substantive civil RICO claim: "a defendant must participate in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity . . . . In addition, the conduct must be (5) the proximate cause of harm to the victim." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citations omitted). In addition, RICO claims based on fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553–54 (9th Cir. 2007).

In Count One, Plaintiff alleges racketeering in violation of 18 U.S.C. § 1964 but cites to various provisions of the RICO Act, including Sections 1964(4),[1] 1961(5), 1962(a), 1962(b), (c), and (d). (Doc. 1 at 8–10.) It is unclear under exactly which sections of the RICO Act Plaintiff is bringing claims. The Court interprets the factual allegations in the Complaint as Plaintiff's attempt to state several claims under the RICO Act. Those claims are deficient for the following reasons.

First, Plaintiff appears to allege a violation of § 1962(c) but has not adequately pled that an enterprise exists. To show that an enterprise exists, a plaintiff must allege that the enterprise has "(A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Props. E.*, 751 F.3d at 997 (citing *Boyle v. United States*, 556 U.S. 938, 946 (2009)). Plaintiff alleges that Defendants "individually and through their alleged business in trading cryptocurrency . . . constitute[] a racketeering operation" and that "Defendant [Czarnecki] and John Doe Defendants 1-5 were each also a member of the RICO Enterprise." (Doc. 1 at 8, ¶¶ 41, 43.) Plaintiff refers to the Defendants' "alleged business" (*Id.* ¶ 41), but the only fact he pleads about the structure or organization of this alleged conspiracy is to refer to Defendant Czarnecki and the five John

---

[1] There is no subsection (4) in 18 U.S.C. § 1964.

Doe Defendants as "cohorts."[2] (*See id.* at 3, ¶ 10.) These statements are conclusory and assume the existence of an enterprise under the RICO Act. Thus, Plaintiff has failed to plead the second element of a RICO claim under 18 U.S.C. § 1962(c).

Next, Plaintiff also has not sufficiently alleged that Defendants participated in a pattern of racketeering activity under § 1962(c). "A 'pattern of racketeering activity' requires at least two predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1), within a period of ten years." *Canyon Cnty.*, 519 F.3d at 972. A plaintiff must also show continuity to establish a pattern of racketeering, and "a single scheme with a single purpose targeting a single victim does not meet [that] requirement." *Makarem v. Get Buzzed LLC*, 2:25-cv-02357 MCW (ASx), 2025 WL 2092818, at *4 (C.D. Cal. July 15, 2025) (collecting cases holding that there is no pattern when a plaintiff alleges several acts amounting to a single alleged fraud against a single victim). Here, Plaintiff alleges that Defendants engaged in wire fraud, and the Defendants' predicate acts include "defrauding Plaintiff beginning in June 2023, through . . . telephone communication, including Telegram messaging, domestic and international in-app communication, and e-mails with Plaintiff." (Doc. 1 at 8–9, ¶ 48.) These acts were all directed against Plaintiff. (*See* Doc. 1.) Because the predicate acts constitute a single scheme, Plaintiff has not sufficiently alleged a pattern of racketeering, the third and fourth elements of a § 1962(c) RICO claim.

Plaintiff also alleges violations of sections 1962(a) and (b) but includes no facts to support those claims—only conclusory statements of law. (*Id.* at 9, ¶¶ 52, 53); *see Ashcroft v. Iqbal*, 556 U.S. 662, 663 (A claim is facially plausible when it contains "factual content [that] allows the court to draw the reasonable inference that the defendant is liable."). Thus, Plaintiff has not alleged sufficient facts in the Complaint to state any claims under RICO.

Plaintiff does not explain these deficiencies in his Motion for Default Judgment. (Doc. 24.) In the Motion, Plaintiff avers that "Plaintiffs (sic) have [e]stablished Defendant's (sic) RICO involvement." (*Id.* at 7.) Plaintiff also asserts he has "pled all elements of

---

[2] Indeed, Plaintiff may not know many facts about the structure of the alleged enterprise given that the five John Doe Defendants' identities remain unknown.

RICO." (*Id.*) The only further information Plaintiff provides is a bare recitation of the elements in § 1962(b). (*Id.; see also* Doc. 1 at 9, ¶ 53.) "[T]o state a claim under § 1962(b) a plaintiff must allege that 1) the defendants' activity led to its control or acquisition over a RICO enterprise, and 2) an injury to plaintiff resulting from defendant's control or acquisition of a RICO enterprise." *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003), *overruled on other grounds*, *Odom*, 486 F.3d at 551 (citation omitted). There are no facts regarding control over the alleged enterprise. (*See* Docs. 1, 24.) The Motion does not clarify what claims Plaintiff is bringing under RICO or address the deficiencies in the Complaint. Thus, Plaintiff is not entitled to default judgment on Count One.

Having found that Plaintiff has failed to state a claim under RICO, the only federal claim in this action, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c). *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988) (When "all federal-law claims are eliminated before trial . . . judicial economy, convenience, fairness, and comity . . . point toward declining to exercise jurisdiction over the remaining state-law claims."); *Ewing v. Auto Transp. Grp., Inc.*, 3:20-cv-01964-WQH-AGS, 2021 WL 12181319, at *6 (S.D. Cal. May 28, 2021) (finding that the plaintiff was not entitled to default judgment on the federal claims and declining to exercise supplemental jurisdiction over the state law claims). Because Plaintiff's claim fails, the second and third *Eitel* factors weigh against default judgment.

Finally, the seventh factor—the policy favoring a decision on the merits—generally weighs in favor of denying default judgment because "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Ultimately, because the second and third *Eitel* factors have not been met, this Court will deny the motion for default judgment. *See GS Holistic, LLC v. Ravens Smoke Shop, Inc.*, No. CV 22-7199-MWF (Ex), 2023 WL 5504964, at *3 (C.D. Cal. July 10, 2023) ("[T]he Court may render judgment based on an assessment of the second and third *Eitel* factors alone."). Because Plaintiff does not allege sufficient facts to state a claim, or even clarify what claims he is alleging, "the Court cannot conclude that the sufficiency of the Complaint and/or merits of the

claims weigh in favor of granting default judgment." *Id.* at *5.

### III. CONCLUSION

Plaintiff's Motion for Default Judgment fails to show how the Complaint sufficiently establishes facts to support the RICO claims against Defendants. (*See* Doc. 24.) In addition, the Court declines to exercise jurisdiction over the state law claims. Therefore, the Court will deny the Motion for Default Judgment. Further, the Court finds that granting Plaintiff leave to amend would be futile because Plaintiff cannot cure the deficiencies in the Complaint with additional facts. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (A district court may deny leave to amend for many reasons, including "futility of amendment."). Consequently, the Complaint will be dismissed without leave to amend. *See Aldabe*, 616 F.2d at 1094 (affirming the district court's dismissal "with prejudice on the ground that the complaint failed to state a claim upon which relief can be granted").

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Default Judgment (Doc. 24) is **denied**.

**IT IS FURTHER ORDERED** that the Complaint (Doc. 1) is **dismissed without leave to amend**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **terminate** this action and enter judgment accordingly.

Dated this 15th day of December, 2025.

Honorable Steven P. Logan
United States District Judge